Marri Derby, State Bar Number 107209
Law Offices of Marri Derby
23 Corporate Plaza, Ste. 150
Newport Beach, CA 92660
marri@marriderbylaw.com
Phone: (949) 478-5084
Fax: (949) 608-7034

Attorney for Defendant Peter Wexler

United States District Court

For The Central District of California

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Peter Wexler,<br><br>    Defendant. | Case No SA CR 15-00122-JLS<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS**<br><br>Motion Date: April 8, 2016<br>Time: 11:30 am<br>Time Estimate: 30 mins |

PLEASE TAKE NOTICE that on April 8, at 11:30 a.m., in Courtroom 10A, before the Honorable Josephine L. Staton, United States District Judge for the Central District of California, Defendant Peter Wexler, through his attorney of record, Marri Derby, will move the Court for an order to dismiss the indictment.

The Motion is made pursuant to Federal Rule of Criminal Procedure 6 E (ii) on grounds that the Government misinstructed the grand jury on the elements of the offense and misled the Grand Jury by presenting evidence out of context.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the files and records of the case, and such further and additional evidence and argument as may be presented at the hearing.

1 | Dated: March 8, 2016            Respectfully Submitted,

                              /s/   *Marri Derby*
                        Marri Derby
                        Attorney for Peter Wexler

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Introduction

Defendant Peter Wexler respectfully requests this Court dismiss the Indictment because the Government misled the Grand Jury by presenting evidence of Mr. Wexler's statements taken out of context and misinstructed The Grand Jury on the law regarding the elements of the charges. The out-of-context evidence and misinstruction substantially influenced the grand jury's decision to indict.

## 2. Relevant Factual and Procedural Background

### a. Alleged Offense Conduct

Defendant was indicted on October 7, 2015, and charged with making threats against federal agents. The charged statements consist solely and entirely of postings on the Defendant's satirical political blog. For years, Defendant has posted commentary on the blog regarding U.S. policy, particularly focusing on what Defendant sees as the hypocrisy of many U.S. government positions regarding police violence, the use of military force, and U.S. alliances with certain Middle Eastern countries, including Israel.

Following some posts in the summer of 2015 by Mr. Wexler regarding news media accounts of police violence against unarmed black citizens, including the Sandra Bland incident in Texas, an anonymous commenter called the Orange County Crime Stoppers and apparently alleged that Defendant was advocating violence against police. The commenter also alleged Mr. Wexler was sympathetic to radical Islam. Mr. Wexler is Jewish and does not support radical Islam. His central political argument regarding radical Islam is that the U.S. ally Saudi Arabia is the primary financial supporter of radical Islam, and that U.S. military interventions in the Middle East are major drivers of recruitment by extremist groups. These arguments are core political speech.

In response to the anonymous call, on September 7, 2015 two FBI agents showed up at Defendant's home, without a warrant, and questioned him about his blog postings and political beliefs. Defendant was shocked, frightened and outraged at this display of what appeared to him to be outright deployment of "thought police." He posted several items on

1 his blog discussing the FBI visit. These postings are the conduct for which he was
2 indictment.

### b. Evidence Presented to Grand Jury

The Grand Jury was provided with a copy of the Indictment (RT 2:14).[1] The prosecutor asked the jurors



(RT 2-3)

The government provided the Grand Jury with no definition of the term "threat," and no reference whatsoever to the objective and subjective elements that must be met as a matter of law for any speech to be prosecuted as a threat, under United States v. *Bagdasarian*, 625 F. 3d. 1113, 1117 (2011). The government made no reference whatsoever to any intent requirement, despite the clear command of *Bagdasarian* that "Because the true threat requirement is imposed by the Constitution, the subjective test set

---

[1] A copy of the reporter's transcripts from the Grand Jury proceedings are attached as Exhibit A. "RT 2:14" refers to Reporters Transcripts, page 2, line 14.

1 forth in Black must be read into all threat statutes that criminalize pure speech." *Id*. at
2 1117.
3       Special Agent ███████████████████████████████████████
4 ███████████████████████████████████████████████████████████████
5 ███████████████████████████████████████████████████████████████
6 ███████████████████████████████████████████████████████████████
7 ███████████████████████████████████████████████████████████████
8 ███████████████████████████████████████████████████████
9 ██████████████████████████████████████████████████
10       ██████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████
12       ████████████████████████████████████████████████████
13 ████████████████████████████

### 3. Legal Argument

As a general matter, District Courts are empowered to dismiss an indictment for errors in grand jury proceedings" where "such errors prejudiced the defendants." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254 (1988). An indictment may be dismissed "if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.*, 487 U.S. at 256 (citation omitted). In *United States v. Isgro*, 974 F.2d 1091 (9th Cir. 1992), cert. denied, 507 U.S. 985 (1993), the court described District Courts' two distinct dismissal powers:

> First, a court may dismiss an indictment if its perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant.' [citations omitted] . . .

1
2
3
4
5
6

> Second, a district court may draw on its supervisory powers to dismiss an indictment . . . . Before it may invoke its power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice - that is, absent ''grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'- a dismissal is not warranted.

7
8

*Isgro*, 974 F.2d at 1094 (emphasis added), citing *Bank of Nova Scotia*, 487 U.S. 250 at 256.

Dismissal is warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make "an informed and objective evaluation of the evidence presented to it." *United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1391 (9th Cir. 1983). The relevant inquiry focuses not on the culpability of the prosecutor, but on the impact of his misconduct on the grand jury's impartiality. *Id.,* at 1392.

Grand jury "misconduct" occurs where the government misstates important facts critical to the return of the indictment, whether unintentionally or intentionally. "Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role." *United States v. Samango*, 607 F.2d 877, 882, 884 (9th Cir. 1979) (affirming dismissal on supervisory grounds where the cumulative effect of government "errors and indiscretions" was sufficiently great to produce a biased grand jury).

This issue must be resolved pretrial, because a motion to dismiss the indictment must be made prior to trial. In *United States v. Mechanik*, 475 U.S. 66 (1986), the U.S. Supreme Court held that any grand jury abuse or prosecutorial misconduct concerning the grand jury is rendered harmless by a subsequent conviction of the defendant by the petit jury. *Mechanik*, 475 U.S. at 67. The Ninth Circuit has held that the *Mechanik* holding applies to virtually any claim of grand jury abuse. *United States v. Dederich*, 825 F.2d

1317 (9th Cir. 1987); *United States v. Benjamin,* 812 F.2d 548 (9th Cir. 1987). Any matters concerning abuse of the grand jury process must be fully litigated pretrial.

### a. The Government Misstated the Law by Failing to Provide Any Insruction on the Mens Rea Required for Commission of the Offense

The Government misstated the law relevant to the charges in this case to the Grand Jury. Where the prosecutors misinstruct the grand jury on the law, the resulting irregularity in the proceedings will require dismissal if "'the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256 (1988) (citation omitted).

Here, the Government advanced legally erroneous instructions to the grand jury regarding the charged offenses. Mens rea is a critical issue in all threat cases. It is difficult to conceive how misinstruction on this critical element would not "substantially influence the grand jury's decision to indict." *Id*.

The transcript reveals that the Government did not give the grand jury the correct instruction on mens rea according to *United States v. Bagdasarian*, 625 F.3d. 1113. The Government gave no instruction whatsoever on mens rea. There was no instruction or definition of "true threat" given. The Grand Jurors were given only the word "threat" in its common parlance. But the caselaw on the First Amendment constraints on prosecution of threat crimes is very clear: the constitutional definition of a "true threat," that must be satisfied in such a prosecution, is very different from the common parlance. When the Government wants to prosecute speech, the Constitution demands that the Government meet a higher standard. "A statute… 'which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind.'" *Watts v. United States*, 394 U.S. 705, 707 (1969). The Government must meet the standard set forth in *Virginia v. Black,* 538 U.S. 343 (2003), and *United States v. Bagdasarian*, 625 F. 3d. 1113 (2011). The Government failed to do so, because it made no effort to do so.

The Government has now conceded in this Court that Defendant is right, and the Government was wrong, about the definition of "true threat" and the mens rea required for conviction. As set forth in the parties briefs on jury instructions, the Government, after initially rejecting Defendant's legal arguments and proposing a set of jury instructions that ignored the "true threat" definition and mens rea requirements of *Bagdasarian*, ultimately conceded that *Bagdasarian* is indeed controlling in this Circuit on all threat cases. See Proposed Joint and Disputed Substantive Jury Instructions, Doc. 68, filed on February 16, 2016.

The Government cannot dispute that its presentation to the Grand Jury does not satisfy the legal requirements of *Bagdasarian*—requirements it concedes are controlling. Therefore, the Government must concede that the Grand Jury was not given the correct law regarding the charges.

### b. The Government Distorted the Evidence

Additionally the Government distorted and misrepresented Defendant's statements by presenting the blog posts out of context. In *Bagdasarian*, the Ninth Circuit noted, "[w]hen our law punishes words, we must examine the surrounding circumstances to discern the significance of those words' utterance, but must not distort or embellish their plain meaning so that the law may reach them." *Bagdasarian*, 652 F.3d at 1122. The Government distorted the plain meaning of Defendant's blog posts by taking them out of context, "so that the law may reach them." Taken out of context, the blogs appear to be threats. Taken *in* context the blog postings are nothing more than political rhetoric and exhortations of violence, all protected speech, and as matter of law *not threats* under *Bagdasarian*.

The postings that are the subject of this Indictment were all posted in September 2015. All postings from September 2015 are attached as Exhibit B. The majority of the postings reference and comment on news articles. For example, on September 23, 2015, (Page 06-07 of Exhibit B) the post contains a link and short statement about Cleveland

officials having a county agency train Cleveland police on how to intervene during mental health crises. Defendant's blog states:

> CLEVELAND: EFFECTIVE POLICING REQUIRES EDUCATION, NOT TRAINING!
>
> I am beyond disgusted with American police. They are "trained" to use lethal force. They are "trained," to a limited degree, about hand to hand combat. They are "trained" to write reports. They are "trained" about arrest procedures. They are "trained" about riot control, and on and on.
>
> Training teaches the trainee how to respond to specific situations. So, now the IDIOTS in Cleveland will "train" police to deal with mental health crises.
>
> The purpose of a well-rounded education is to enable students to logically think through problems that never appear on any standardized test.
>
> WHY aren't police required to obtain a four-year college degree along with certifications in law enforcement in a similar way that a CPA receives education or a teacher receives education and certification or a nurse receives education and certification? WHY is it, at most, police departments may require a two-year bullshit college degree, rather than a robust four-year degree?
>
> Four-year college degrees allow people to adjust to differing conditions. Two-year bullshit training degrees don't.

On September 22, in a post about the Georgia peanut executive who received 28 years in prison for knowingly marketing peanuts with deadly salmonella (Page 013, Exhibit B), Defendant 's blog states:

> HOW CAN ANYONE KNOWINGLY DISTRIBUTE FOOD MADE TOXIC BY DEADLY BACTERIA?
>
> This case reminds me of letterbomb cases (yes, Mr. Bowdich, I said "LETTERBOMB") where the killer puts his device in the mail and does nothing to stop the consequences. This is worse in a way than a Kaczynski Kare pacKage because peanut butter, the transmission vector, ended up in children's lunch boxes more often than anyplace else.
>
> Something tells me that there are lots of parents planning a way for this guy to commit "suicide" during his stay in the federal joint!"

There are several posts about the Republican and Democratic presidential primary candidates. For example, when Scott Walker suspended his presidential campaign:

> "WHOOPS! THERE GOES SCOTT "RIGHT TO WORK [FOR LESS]" WALKER! Scott Walker is a PIG from Wisconsin who introduced union lockout legislation, called "Right to Work." He is what has gone wrong with America. His goal is to make the rich richer, and sweat the little guy for as much as can be!" (Page 017-018, Exhibit B)

All of the posts on the Defendant's blog are about current events. . Though Defendant's language and imagery are uncouth, vulgar, and often unpleasant, under *Bagdasarian* Defendant's statements simply are not threats as a matter of law.

In *Bagdasarian*, the defendant made the statements during the election campaign for United States president. The statements "RE: Obama fk the niggar, he will have a 50 cal in the head soon" (the defendant was found to possess six firearms, including a .50 caliber rifle and .50 caliber ammunition) and "shoot the nig" were as a matter of law, not true threats. [There were several other statements: "Pistol??? Dude, Josh needs to get us one of these, just shoot the nigga's car and POOF!" (The email provided a link to a webpage advertising a large caliber rifle.) "Pistol…plink plink plink Now when you use a 50 cal on a nigga car you get this." (This included a link to a video of a propane tank, a pile of debris, and two junked cars being blown up.)] Although inexcusable and disgusting, none of *Bagdasarian's* statements were true threats as a matter of law.

Many postings on the Defendant's blog are in equally poor taste. Many are crude, vulgar, and more than discomfiting. Defendant's statements, however, when read in context, are political statements. As the Ninth Circuit explained, the Constitution offers the highest protection to precisely the type of speech found on Defendant's blog:

> We have recognized that certain types of speech enjoy special status. See, e.g., *Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir.1988) ("The first amendment affords greater protection to noncommercial than to commercial expression."). Political speech is core First Amendment speech, critical to the functioning of our democratic system. The Peace Network's protest of the United States military action in Iraq is the type of speech that "rest[s] on the highest rung of the hierarchy of First Amendment values." See *Carey v. Brown*, 447 U.S. 455, 467,

>  100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); see also *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."); *Thornhill,* 310 U.S. at 95, 60 S.Ct. 736 ("Those who won our independence had confidence in the power of free and fearless reasoning and communication of ideas to discover and spread political and economic truth. Noxious doctrines in those fields may be refuted and their evil averted by the courageous exercise of the right of free discussion.").

*Long Beach Area Peace Network v. City of Long Beach* 574 F. 3d 1011, 1021 (9th Cir. 2008).

Here, as a matter of law, the Government was required to present Defendant's statements in context. The Grand Jury should have been provided the month of September blog posts, placing the posts contained in the Indictment in context. When read in context, the posts regarding the FBI and David Bowdich are not "true threats."

### c. The Misstatement of the Law and Distortion of Evidence Substantially Influenced the Grand Jury's Decision to Indict

The errors committed by the Government, whether intentional or careless, substantially influenced the Grand Jury's decision. The Government left the Grand Jury with the legally inaccurate guidance that the only issue before them was whether the Defendant is the person who posted the statements. The Government provided no guidance or discussion regarding the nature of the blog or the legal definition of "true threat," or the mental state required for the crime. The Grand Jury was left to define "threat" for themselves, undoubtedly resorting to common parlance.

While the Government is not under an obligation to introduce exculpatory evidence to the Grand Jury (*United States v. Isgro*, 974 F.2d 1091, 1096), putting the postings in context is not exculpatory, *it is constitutionally required as part of the definition of the charged offense.* The context is essential to understanding the meaning of the posts. The Constitution demands nothing less when the Government desires to punish pure speech.

### 4. Conclusion

Defendant respectfully requests this Court dismiss the Indictment.

Dated: March 8, 2016                               Respectfully Submitted,


                                                   */s/   Marri Derby*
                                                   Marri Derby
                                                   Attorney for Peter Wexler