1  | EILEEN M. DECKER
United States Attorney
2  | PATRICIA A. DONAHUE
Assistant United States Attorney
3  | Chief, National Security Division
ANNAMARTINE SALICK (Cal. Bar No. 309254)
4  | Assistant United States Attorney
Terrorism and Export Crimes Section
5  |      1500 United States Courthouse
312 North Spring Street
6  |      Los Angeles, California 90012
Telephone: (213) 894-3424
7  |      Facsimile: (213) 894-7631
E-mail:    annamartine.salick2@usdoj.gov
8  | B. CELESTE CORLETT
Arizona State Bar No. 021724
9  | Assistant United States Attorney
Terrorism and Export Crimes Section
10 | 8000 United States Courthouse
411 West Fourth Street
11 |      Santa Ana, California 92701
Telephone: (714) 338-3541
12 |      Facsimile: (714) 338-3708
E-mail:   celeste.corlett@usdoj.gov
13 |
Attorneys for Plaintiff
14 | UNITED STATES OF AMERICA

15 |                UNITED STATES DISTRICT COURT

16 |              FOR THE CENTRAL DISTRICT OF CALIFORNIA

17 | UNITED STATES OF AMERICA,          SA CR No. 15-122-JLS

18 |           Plaintiff,              GOVERNMENT'S MOTION TO PRECLUDE
THE TESTIMONY OF DEFENDANT'S
19 |           v.                      PROPOSED EXPERTS, DR. MANUEL SAINT
MARTIN, MR. MIKE MASNICK, AND
20 | PETER RONALD WEXLER,              PROFESSOR DON ABBOTT, OR IN THE
ALTERNATIVE, TO LIMIT DR. SAINT
21 |           Defendant.             MARTIN'S TESTIMONY AND A REQUEST
FOR A *DAUBERT* HEARING ON ALL
22 |                                  PURPORTED EXPERTS; DECLARATION OF
ANNAMARTINE SALICK
23 |
Trial Date:   August 23, 2016
24 |                                  Hearing Date: August 12, 2016
Time Estimate: 30 minutes
25 |

26 |

27 |

28 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and undersigned counsel, hereby files the Government's Motion to Preclude The Testimony of Defendant's Proposed Experts, Dr. Manuel Saint Martin, Mr. Mike Masnick, and Professor Don Abbott, or in the Alternative, to Limit Dr. Saint Martin's Testimony and a Request for a Daubert Hearing on All Purported Experts.  Pursuant to the Court's Standing Order, undersigned counsel telephoned counsel for defendant to ascertain defendant's position on the present motion.  Counsel for defendant stated that defendant objected to the motion.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.  The government respectfully requests the opportunity to supplement its motion as may become necessary.

Dated: July 15, 2016                Respectfully submitted,

                                    EILEEN M. DECKER
                                    United States Attorney

                                    PATRICIA A. DONAHUE
                                    Assistant United States Attorney
                                    Chief, National Security Division


                                     /s/
                                    ANNAMARTINE SALICK
                                    CELESTE CORLETT
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES ............................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ............................ 1

I.    INTRODUCTION ............................................. 1

II.   ARGUMENT ................................................ 1

      A.    The Court Should Preclude Defendant From Calling
            Dr. Saint Martin as an Expert Witness, or in the
            Alternative, Limit His Testimony and Schedule a
            Hearing to Assess the Reliability of His
            Testimony ........................................ 3

            1. The Rules Governing Expert Testimony ........... 4

            2. Dr. Saint Martin Should be Precluded From
               Testifying Because Defendant Has Failed to
               Demonstrate that His Testimony is Relevant,
               Reliable, and Will Assist the Jury ............. 6

            3. Dr. Saint Martin Should be Precluded From
               Testifying as to Whether Defendant Did or
               Did not have the Requisite *Mens Rea* to Commit
               The Charged Offenses ........................... 9

      B.    The Court Should Preclude Mr. Masnick and
            Professor Abbott's Testimony Because Defendant
            Failed to Comply with His Notice Obligations
            And Because Defendant Has Failed to Demonstrate
            That Such Testimony is Relevant, Reliable, and
            Will Assist the Trier of Fact .................... 11

      C.    A Hearing for Defendant's Purported Expert
            Witnesses Is Warranted Because Defendant has
            Failed to Demonstrate That Their Testimony will
            Be Relevant, Reliable, and Will Assist the
            Trier of Fact .................................... 14

III.  CONCLUSION .............................................. 15

1

# TABLE OF AUTHORITIES

2   DESCRIPTION                                                  PAGE

3   FEDERAL CASES

4   Estate of Barabin v. AstenJohnson, Inc.,

5       740 F.3d 457 (9th Cir. 2014) .............................14

6   CR. 825(PKL),

7       2003 WL 223212 (S.D.N.Y. Jan. 31, 2003) ................. 12

8   Daubert v. Merrell Dow Pharmaceuticals, Inc.,

9       509 U.S. 579 (1993) .................................4, 5

10  Elonis v. United States,

11      135 S. Ct. 2001 (2015) ................................. 9

12  Jasper,

13      2003 WL 223212.. ......................................13

14  Kumho Tire Co., Ltd. v. Carmichael,

15      526 U.S. 137 (1999) .................................... 5

16  Lust v. Merrell Dow Pharmaceuticals, Inc.,

17      89 F.3d 594 (9th Cir. 1996) ........................4, 14

18  United States v. Amaral,

19      488 F.2d 1148 (9th Cir. 1973) ......................... 5

20  United States v. Bagdasarian,

21      652 F.3d 1113 (9th Cir. 2011) ......................... 9

22  United States v. Cassel,

23      408 F.3d 622 (9th Cir. 2005) ......................... 9

24  United States v. Concessi,

25      Nos. 01-4949, 01-4951, 2002 WL 1162339 .................... 12

26  United States v. Dela Cruz,

27      358 F.3d 623 (9th Cir. 2004) .....................5, 7, 8

28

TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                           PAGE

United States v. Duran,

   41 F.3d 540 (9th Cir. 1994 ............................... 11

United States v. Harmanek,

   289 F.3d 1076 (9th Cir. 2002) ............................. 5

United States v. Jasper,

   No. 00 ................................................... 12

United States v. Jawara,

   474 F.3d 565, 582 (9th Cir. 2007) ........................ 14

United States v. Lukashov,

   694 F.3d 1107, 1112 (9th Cir. 2012) ...................... 14

United States v. Mahaffy,

   No.05-CR-613(S-3)(ILG), 2007 WL 1213738

   (E.D.N.Y. Apr. 24, 2007) ................................. 12

United States v. Morales,

   08 F.3d 1031 (9th Cir. 1997) .............................. 9

United States v. Nash,

   115 F.3d 1431 (9th Cir. 1997) ............................ 11

United States v. Orozco-Santillan,

   903 F.2d 1262 (9th Cir. 1990) ............................ 10

United States v. Rogers,

   No. 05-292(RWR), 2006 WL 5249745 (D.D.C. July 17, 2006) ....12

United States v. Singaglio,

   942 F.2d 581 (9th Cir. 1991) .............................. 5

United States v. Winters,

   729 F.2d 602 (9th Cir. 1984) .............................. 4

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

FEDERAL STATUTES

18 U.S.C. § 115 (a)(1)(b) ................................... 1, 2

18 U.S.C. § 875 (c) ........................................... 1

Fed. R. Crim. P. 16(b)(1)(C) ................................ 11

Fed. R. Crim. P. 16(d)(2) ................................... 11

Fed. R. Evid. 402 ........................................... 4

Fed. R. Evid. 704(b) ...................................... 9, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Peter Ronald Wexler ("defendant") is charged in a twenty-count Indictment with making violent threats to Federal Bureau of Investigation ("FBI") special agents, and in particular, Assistant Director-in-Charge ("ADIC") David Bowdich, in violation of 18 U.S.C. § 875 (c), threats to injure in interstate commerce, and 18 U.S.C. § 115 (a)(1)(b), threatening a federal officer.  Docket Number ("Dkt.") 17.

On June 15, 2016, defendant filed a notice of intent to present expert evidence regarding the mental health condition of defendant, identified Dr. Manuel Saint Martin as defendant's proposed expert, and disclosed Dr. Saint Martin's expert report.  Dkt. 102.  Defendant also filed an application to review/reconsider detention based on Dr. Saint Martin's conclusions.  Dkt. 103.  The government opposed the application, arguing Dr. Saint Martin's report was based on insufficient information, applied scientific methods unreliably, and made unsubstantiated conclusions regarding defendant's intent at the time of the charged offenses and defendant's dangerousness.  Dkt. 110.  On June 22, 2016, the Court denied Defendant's application.  Dkt. 113.

On June 23, 2016, the government filed an ex parte application to evaluate defendant and for disclosure of defendant's prior mental health examinations and mental health records.  Dkt. 118.  Defendant opposed the application, and on July 8, 2016, the Court granted, in part, the government's application and appointed Dr. Saul J. Faerstein to evaluate defendant.  Dkt. 119, 121.

1    On July 13, 2016, the government employed Dr. Faerstein to

2 evaluate defendant and prepare a report, which Dr. Faerstein intends

3 to complete by the first week of August.  (Salick Decl. ¶ 7.)  Dr.

4 Faerstein will also review Dr. Saint Martin's report and the

5 government anticipates raising additional challenges to Dr. Saint

6 Martin's proposed testimony after Dr. Faerstein has had an

7 opportunity to review Dr. Saint Martin's report.

8    On July 7, 2016, undersigned counsel asked defendant to provide

9 expert notice of any additional expert witnesses defendant intends to

10 introduce.  (Salick Decl. ¶ 5.)  Counsel for defendant responded that

11 defendant intends to call three expert witnesses "at this point" for

12 trial, Dr. Saint Martin, Mr. Mike Masnick, and Professor Don Abbott.

13 (Salick Decl. ¶ 6.)  With respect to Mr. Masnick, defense counsel

14 stated "we do not have a report yet" and "I will get you a brief

15 description of his testimony and his CV shortly."  (Id.)  With

16 respect to Professor Abbott, defense counsel stated, "we do not have

17 a report yet" and "I will get you his CV and a description of his

18 testimony shortly as well.  He is a professor of political rhetoric,

19 recently retired, from UC Davis."  (Id.)

20    After a second request, defendant disclosed, on July 13, 2014,

21 Mr. Masnick and Professor Abbott's curricula vitae.  (Salick

22 Decl. ¶ 9).  However, defendant did not provide any further details

23 regarding the subject of Mr. Masnick's or Professor Abbott's

24 testimony or the basis for their conclusions.  (Id.)  Defense counsel

25 informed the government that Mr. Masnick and Professor Abbott were

26 preparing reports and they would be disclosed to the government at a

27 later date.  (Id.)

28

Trial is just five weeks away.  The government has serious questions regarding the reliability of Dr. Saint Martin's conclusions and has yet to receive sufficient notice of defendant's additional expert witnesses.  The government grows increasingly concerned that defendant's failure to meet his obligations may interfere with the efficient conduct of the trial and with the Court's gatekeeping function regarding expert testimony.  These concerns result from defendant's failure to comply with the Federal Rules of Criminal Procedure by providing untimely and insufficient notice. Accordingly, the government respectfully moves this Court to:  (1) preclude defendant from calling Dr. Saint Martin as an expert witness, or the in alterative, limit Dr. Saint Martin's testimony and schedule a hearing at the Court's convenience to assess the reliability of Dr. Saint Martin's testimony; and (2) preclude defendant from calling Mr. Masnick or Professor Abbott, or in the alterative, schedule a hearing at the Court's convenience to evaluate the relevance, reliability, and helpfulness of their testimony.

## II.   ARGUMENT

### A.   The Court Should Preclude Defendant From Calling Dr. Saint Martin As An Expert Witness, Or In The Alterative, Limit His Testimony and Schedule a Hearing to Assess the Reliability of His testimony

Dr. Saint Martin should not be qualified as an expert and his report should not be credited because it is based on insufficient information, applies scientific methods unreliably, and contains inadmissible conclusions regarding defendant's mental state during the time of the charged offenses.  Dr. Saint Martin should be precluded from testifying at trial, or in the alternative, his testimony regarding defendant's mental state at the time of the

offense should be limited and a hearing ordered to allow the parties to fully explore Dr. Saint Martin's reliability.

###    1.    The Rules Governing Expert Testimony

(Federal Rule of Evidence 402 provides, in part, that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 702(a) provides that, a witness may be qualified as an expert and provide an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Id.; see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) (internal quotation marks and citation omitted) (To be admissible, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.")

Expert testimony "is admissible under Rule 702 if the subject matter at issue is beyond the common knowledge of the average layman, the witness has sufficient expertise, and the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." United States v. Winters, 729 F.2d 602, 605 (9th Cir. 1984). It is the proponent's burden to establish relevance and reliability by a preponderance of the evidence. See Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996).

The district court is the "gatekeeper" of expert witness testimony and the court is charged with assuring that the expert testimony "rests on a reliable foundation and is relevant to the task

4

1  at hand."  United States v. Harmanek, 289 F.3d 1076, 1093 (9th Cir.
2  2002) (citing Daubert, 509 U.S. at 592-93).  This gatekeeping role
3  "entails a preliminary assessment of whether the reasoning or
4  methodology underlying the testimony is . . . valid and of whether
5  that reasoning or methodology properly can be applied to the facts in
6  issue."  Id.  The gatekeeping function applies not only to scientific
7  testimony, but to expert testimony of any kind.  Kumho Tire Co., Ltd.
8  v. Carmichael, 526 U.S. 137, 147 (1999).

9       The trial court's gatekeeping function is vital to ensure
10 accurate and unbiased decision-making by the trier of fact.  Kumho
11 Tire, 526 U.S. at 147.  Because expert testimony carries the "aura of
12 special reliability and trustworthiness," it raises a substantial
13 danger of undue prejudice and courts must pay particular attention in
14 assessing its admissibility.  See United States v. Amaral, 488 F.2d
15 1148, 1152 (9th Cir. 1973).  District courts have wide latitude to
16 exclude expert testimony and exercise their important gatekeeping
17 role.  See, e.g., United States v. Singaglio, 942 F.2d 581, 584 (9th
18 Cir. 1991).

19      Moreover, expert testimony regarding mental health carries an
20 even greater risk of prejudice and confusion and the Ninth Circuit
21 instructs district courts to use extra care in admitting mental
22 health expert testimony.  See e.g., United States v. Dela Cruz, 358
23 F.3d 623, 626 (9th Cir. 2004) (excluding expert psychological
24 testimony and expressing "particular concern with expert testimony
25 offered by mental health professionals about a mental state that is
26 an element of the crime.").

27      To exercise this gatekeeping function, Daubert articulated a
28 two-step guide:  first, the trial court must make a "preliminary

5

assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue; second, the court must "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact." Daubert, 509 U.S. at 592-93.

> 2.   Dr. Saint Martin Should Be Precluded From Testifying Because Defendant has Failed to Demonstrate that His Testimony Is Relevant, Reliable, and Will Assist the Jury

Dr. Saint Martin's report is based on insufficient data and unreliably applied scientific methods.  First, Dr. Saint Martin has not reviewed any of three Court-ordered mental health evaluations conducted in this case or the report of the first mental health expert retained by defendant.  These reports would provide necessary information regarding defendant's psychiatric history, patterns of behavior, prior claims of mental health issues, and treatment. Indeed, Dr. Saint Martin's report lacks any discussion of defendant's educational background, family history, or any prior mental health issues defendant may have experienced.

In addition, Dr. Saint Martin did not review any of the medical or mental health records from either the Santa Ana Jail or the Metropolitan Detention Center.  Dr. Saint Martin notes that defendant self-reports that he has been proscribed medication, has not made any suicide attempts, and has not received mental health treatment while incarcerated.   See Saint Martin Report, at 2, 8.  And yet, Dr. Saint Martin failed to independently verify any of these claims by reviewing the records from either Santa Ana Jail or the Metropolitan Detention Facility or by reviewing the four prior mental health

evaluations.  His approach in this matter, i.e., ignoring or failing
to review other pertinent records, seemingly falls far below the
accepted standards for a medical professional purporting to assess a
patient.  At best, his assessment is incomplete and inaccurate,
triggering a very real danger of misleading the jury.

Second, Dr. Saint Martin fails to adequately account for the
evidence of defendant's malingering.  According to Dr. Saint Martin,
defendant's scores on the two tests Dr. Saint Martin based his
diagnosis on demonstrate evidence of defendant's over-reporting and
avoidance of self-disclosure.  However, Dr. Saint Martin failed to
account for this evidence and appears to have unquestionably accepted
defendant's self-reporting.

With respect to the Million Clinical Multiaxial Inventory Third
Edition (MCMI-III), Dr. Saint Martin notes that defendant's
"disclosure scale," which measures the individual's self-disclosure,
was a "53."  Dr. Saint Martin concedes that this shows defendant
"avoid[s] self-disclosure."  Id. At 5.  However, instead of
investigating the reasons behind defendant's resistance and guarded
response to the examination, Dr. Saint Martin simply "adjusted"
defendant's other scores.  Id.  Significantly, Dr. Saint Martin did
not report defendant's raw scores on this test, but instead
"adjusted" defendant's scores "to account for Mr. Wexler's low
[disclosure] score."  Dr. Saint Martin did not explain his method for
"adjusting" defendant's scores or account for the effect that this
manipulation of data may have had on ultimate conclusions.

Similarly, the Minnesota Multiphasic Personality Inventory
Reformatted ("MMPI-RF") test, shows that defendant was "over
reporting symptoms."  See Saint Martin Report at 6-7.  With respect

7

1  to defendant's "TRIN-r" score," which measures the consistency of
2  responses, Dr. Saint Martin concluded that there is "evidence of
3  random responding."   Id. at 6.   With respect to defendant's "FR-p"
4  score, which differentiates between "over-reporting of symptoms
5  versus genuine symptoms," Dr. Saint Martin reports that defendant's
6  score was "significantly elevated."   Id. at 7.   Dr. Saint Martin
7  concludes that "individuals with genuine symptoms rarely have
8  elevated "Fp-r" scores.   Id.

9       Notwithstanding the evidence of defendant's resistance to self-
10 disclosure on the MCMI-III or evidence of defendant's over-reporting
11 on the MMPI-RF, Dr. Saint Martin unquestionably credited defendant's
12 self-reporting during the mental health evaluation and failed to take
13 any steps to verify defendant's self-reporting.   Dr. Saint Martin did
14 not consult the prior mental health evaluation or verify defendant's
15 claims with defendant's incarceration records.   Although Dr. Saint
16 Martin concedes defendant's scores on the MMPI-RF rendered that test
17 "profile invalid," Dr. Saint Martin nevertheless based his diagnosis
18 on defendant's performance on the Million Clinical Multiaxial
19 Inventory Third Edition test – a test that relies wholly on the
20 taker's self-reporting, which is inherently suspect in these
21 circumstances.   Id. at 5-6.

22      Dr. Saint Martin relied on insufficient data and applied
23 scientific principles unreliably.   His views therefore do not pass
24 muster under Daubert because defendant cannot show that Dr. Saint
25 Martin's reasoning or methodology are valid or that they were
26 properly applied to the facts of this case.   Therefore, the Court
27 should exercise its gatekeeping function and preclude him from
28 testifying as an expert witness.   Alternatively, as discussed in Part

1  C below, the Court should hold a <u>Daubert</u> hearing to determine the

2  relevance, reliability, and helpfulness of Dr. Saint Martin's

3  proposed testimony, which are defendant's burden to prove.

### 3.   Dr. Saint Martin Should be Precluded from Testifying As to Whether Defendant Did or Did Not Have the Requisite <u>*Mens Rea*</u> to Commit the Charged Offenses

6  Dr. Saint Martin's report contains many conclusions regarding

7  defendant's <u>mens rea</u> at the time of the offense conduct.  Such

8  conclusions are inadmissible at trial and Dr. Saint Martin should be

9  precluded from testifying on this ultimate issue.  Federal Rule of

10  Evidence 704(b) provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are matters for the trier of fact alone.

16  Fed. R. Evid. 704(b).  The Ninth Circuit is similarly clear:  "An

17  expert expressing conclusions about defendant's mental health may not

18  testify as to whether defendant did or did not have the requisite

19  <u>mens rea</u>."  <u>United States v. Morales</u>, 108 F.3d 1031, 1036 (9th Cir.

20  1997).

21  At trial, the jury must decide whether defendant possessed the

22  necessary <u>mens rea</u> to commit the charged offenses.  Whether defendant

23  intended to communicate a threat to physically harm or murder and

24  whether defendant intended to impede, intimidate, or interfere with

25  the FBI are questions for the jury.  <u>See</u> Proposed Substantive Jury

26  Instructions - Disputed, Dkt. No. 68; <u>Elonis v. United States</u>, 135 S.

27  Ct. 2001 (2015); <u>United States v. Bagdasarian</u>, 652 F.3d 1113, 1118,

28  1122 (9th Cir. 2011); <u>United States v. Cassel</u>, 408 F.3d 622, 631 (9th

1  Cir. 2005); <u>United States v. Orozco-Santillan</u>, 903 F.2d 1262, 1265

2  (9th Cir. 1990).

3       Dr. Saint Martin's report contains numerous conclusions that

4  defendant did not have the required mental state to commit the

5  charged offenses.  For example, Dr. Saint Martin states, "Mr.

6  Wexler's mental functioning with respect to the statements that he

7  posted on his website does not indicate that he intended to threaten

8  or harm the FBI agents."  Dr. Saint Martin Report at 7.  Indeed, the

9  majority of the final paragraph is replete with conclusions that are

10 inadmissible at trial, specifically:

11      Mr. Wexler's subject intent was to express his
        indignation at the FBI as an organization . . . rather
12      than target individual agents, and to create more
        controversy.  Mr. Wexler's comments were directed at
13      anyone who would read his posts and not meant to be a
        threating communication to a specific persons. . . .
14      Mr. Wexler's statements were not intended to influence
        the FBI's course of action with respect to himself.
15

16

17 Dr. Saint Martin Report, at 9.

18      Dr. Saint Martin's claims, based on his assessment conducted

19 long after the conduct charged in the indictment of defendant's self-

20 reporting to the exclusion of other pertinent mental health records,

21 are tantamount to claiming that Dr. Saint Martin is somehow able to

22 travel back in time to read defendant's mind at the time of the

23 crimes.  This claim is patently not credible.  Moreover, to the

24 extent that Dr. Saint Martin purports to interpret the language of

25 defendant's threats, he invades too far into the province of the

26 jury.  That invasion and the danger of undue influence on the jury

27 posed by experts are the precise reasons for Rule 704.  At trial, Dr.

28 Saint Martin should be precluding from "state[ing] an opinion or

1  inference as to whether the defendant did or did not have the mental
2  state."   Fed. R. Evid. 704(b).

3       B.   The Court Should Preclude Mr. Masnick and Professor
            Abbott's Testimony Because Defendant Failed to Comply with
4           His Notice Obligations and Because Defendant Has Failed to
            Demonstrate That Such Testimony Is Relevant, Reliable, and
5           Will Assist the Trier of Fact.

6

7       Despite the looming trial date and despite repeated requests,
8  defendant has failed to comply with his notice obligations under
9  Federal Rule of Criminal Procedure 16.   A Court may preclude the
10 proffered expert testimony on this basis alone.   See Fed. R. Crim. P.
11 16(d)(2); United States v. Duran, 41 F.3d 540, 545-56 (9th Cir. 1994)
12 (affirming district court's ruling to exclude defense evidence
13 because of a failure to comply with Rule 16).
14      Rule 16(b)(1)(C) requires that each expert witness defense
15 designates include a "summary of any testimony that the defendant
16 intends to use," and that such summary "must describe the witness's
17 opinions [and] the bases and reasons for those opinions."   Fed. R.
18 Crim. P. 16(b)(1)(C).   It further requires defendant to provide the
19 bases and reasons for those opinions, as well as the witnesses'
20 qualifications.   Id.   Although Rule 16 does not specify how far in
21 advance of trial expert notice must be provided, courts can and
22 routinely do preclude expert testimony for which untimely notice has
23 been given.   See, e.g., United States v. Nash, 115 F.3d 1431, 1439-40
24 (9th Cir. 1997) (excluding expert testimony because defendant "failed
25 to disclose the expert witness' existence, let alone his conclusions,
26 to the government, in violation of the district court's discovery
27 order.").

28

Rule 16(b)(1)(C) is designed to give notice to the government and to the defense of the substance of the expert opinion testimony each side will offer.  Without identifying the substance or the relevance of the experts' testimony, the notice function is circumvented.  See, e.g., United States v. Jasper, No. 00 CR. 825(PKL), 2003 WL 223212, at *4 (S.D.N.Y. Jan. 31, 2003) (noting "the objectives behind Rule 16's provision for reciprocal discovery obligations--i.e. 'to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross-examination' and 'to permit more complete pretrial preparation'--in determining the nature of defendant's discovery obligations under Rule 16(b)(1)(c).").  The parties and the Court are thus deprived of an opportunity to sufficiently test expert testimony before trial. Errors at trial can result.

When a disclosure is made close to trial, it may still be excluded if it identifies only a general topic of testimony without providing a sufficient summary of the opinions that will be offered, as required by Rule 16(b)(1)(c).  United States v. Concessi, Nos. 01-4949, 01-4951, 2002 WL 1162339, 38 Fed. Appx. 866, 868 (4th Cir. 2002) (excluding testimony of experts who had been designated days before trial where disclosures included "only the general topics concerning which each proposed expert would testify," but "failed to describe the witnesses opinions or provide the bases and reasons for the witnesses' opinions"); United States v. Mahaffy, No. 05-CR-613(S-3)(ILG), 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007) ("The testimony would also be excluded because the disclosure statement only proffered general topics and did not describe any opinions that would be offered by the witness on these topics."); United States v.

1  Rogers, No. 05-292(RWR), 2006 WL 5249745, at *3 (D.D.C. July 17,
2  2006) ("Rule 16 does require a sufficient summary of the expert's
3  testimony, and not simply a list of testimony topics.").

4       Defendant has failed to comply with his notice obligations and
5  has not met his burden to establish by a preponderance of the
6  evidence that Mr. Masnick and Professor Abbott will present relevant
7  and reliable testimony at trial.  In February 2016, counsel for
8  defendant informed the government via e-mail of two "potential
9  experts," Dr. Manuel Saint Martin and Mike Masnick.  Regarding Dr.
10  Saint Martin, defendant stated, "I have no information at this point
11  as to whether we will actually call him as a witness, but wanted to
12  give you this information."  Regarding Mr. Masnick, defendant stated,
13  "If called, he would testify about the history of blogs and social
14  media.  He will testify about internet culture and subcultures and
15  explain how blogs work and the technology behind blogging."  (Salick
16  Decl. ¶ 3.)  After repeated inquiries, counsel for defendant
17  disclosed this week Mr. Masnick and Professor Abbott's curricula
18  vitae, but did not provide any further details regarding the subject
19  of their proposed testimony, provide a summary of such testimony,
20  disclose the reports defendant advised will be prepared, or explain
21  the basis for their opinions, whatever those may be.  (Salick Decl. ¶
22  9.)

23       Identifying the subject matter of their testimony and the bases
24  for their opinions is not only necessary to permit a focused cross
25  examination, Jasper, 2003 WL 223212, at *4, but also to establish
26  relevance to this case and, thus, admissibility.  The government and
27  the Court cannot begin to evaluate the conclusions made by or methods
28  employed by these experts.  Because defendant has not met his burden

1   to establish relevance and reliability by a preponderance of the

2   evidence, see Merrell Dow Pharmaceuticals, Inc., 89 F.3d at 598, Mr.

3   Masnick and Professor Abbott should be precluded from testifying at

4   trial.

5   C.   A Hearing For Defendant's Purported Expert Witnesses is
         Warranted Because Defendant has Failed to Demonstrate that
6        Their Testimony will be Relevant, Reliable, and Will Assist
         the Trier of Fact
7

8        Defendant has failed to demonstrate by a preponderance of the

9   evidence that any of the purported expert witnesses will provide

10  relevant and reliable testimony. See id.  It is well-established

11  Ninth Circuit precedent that in cases where the proposed witness's

12  expertise or methodologies are disputed, a pre-trial hearing is a

13  proper way for a court to exercise its gatekeeping function.  See

14  Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463-64 (9th

15  Cir. 2014; United States v. Lukashov, 694 F.3d 1107, 1112 (9th Cir.

16  2012); United States v. Jawara, 474 F.3d 565, 582 (9th Cir. 2007).

17       Dr. Saint Martin's report raises serious questions regarding the

18  reliability of his conclusions and the methodology of his evaluation.

19  Defendant has yet to disclose the subject of Mr. Masnick or Professor

20  Abbott's testimony, their reports, or the basis for their opinions.

21  Therefore, a hearing is warranted to allow the Court to exercise its

22  gatekeeping function and determine whether the experts' proposed

23  testimony is relevant, reliable, and will assist the jury, all of

24  which are defendant's burden to prove.

25

26

27

28

## III. CONCLUSION

Consistent with the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and well-established precedent, the Court should exercise its vital gatekeeping function given defendant's deficient notice and disclosures here.  The government respectfully seeks an order to: (1) preclude defendant from calling Dr. Saint Martin as an expert witness, or the in alterative, limit Dr. Saint Martin's testimony and schedule a hearing at the Court's convenience to assess the reliability of his testimony ; and (2) preclude defendant from calling Mr. Masnick or Professor Abbott as expert witnesses, or in the alterative, schedule a hearing at the Court's convenience to evaluate the relevance, reliability, and helpfulness of their testimony.

1

### DECLARATION OF ANNAMARTINE SALICK

2    I, Annamartine Salick, hereby declare

3    1.   I am an Assistant United States Attorney for the Central

4    District of California.  In that capacity, I have been assigned

5    responsibility for handling the prosecution in United States v. Peter

6    Ronald Wexler, No. SA CR 15-122-JLS.

7    2.   On January 22, 2016, the government, provided notice

8    pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), of the

9    single expert witness the government intends to call in its case-in-

10   chief.  As it has in each of its discovery letters, beginning in

11   October, 2015, requested reciprocal discovery from defendant pursuant

12   to Rules 16(e) and 26.2 of the Federal Rules of Criminal Procedure.

13   3.   On February 26, 2016, counsel for defendant informed the

14   government via e-mail of two "potential experts," Dr. Manuel Saint

15   Martin and Mike Masnick.  Regarding Dr. Saint Martin, defendant

16   stated, "I have no information at this point as to whether we will

17   actually call him as a witness, but wanted to give you this

18   information."  Regarding Mr. Masnick, defendant stated, "If called,

19   he would testify about the history of blogs and social media.  He

20   will testify about internet culture and subcultures and explain how

21   blogs work and the technology behind blogging."

22   4.   On March 3, 3016, having not received any additional

23   information regarding defendant's expert witnesses, the government

24   filed a motion in limine to preclude any late or undisclosed

25   reciprocal discovery, testimony from any unnoticed expert witness,

26   and any unnoticed affirmative defenses.  Dkt. 76.

27

28

1        4.   On June 15, 2016, counsel for defendant noticed his intent

2  to present evidence of mental condition and disclosed Dr. Manuel

3  Saint Martin's Circulum Vite and report.

4        5.   On July 7, 2016, undersigned counsel e-mailed counsel for

5  the defendant and asked if defendant intended on calling any expert

6  witnesses other than Dr. Saint Martin and requested defendant comply

7  with his disclosure obligations pursuant to Federal Rule of Criminal

8  Procedure 16(a)(1)(G).

9        6.   On July 7, 2016, counsel for defendant responded, in

10  relevant part:

11           I can confirm that we are expecting to call the following
       witnesses (at this point) at trial:

12           1.  Dr. Saint Martin (you have his report)
          2.  Mr. Mike Masnick (we do not have a report yet).  I will

13       get you a brief description of his testimony and his CV shortly.
          3.  Professor Don Abbott (we do not have a report yet).  I

14       will get you his CV and a description of his testimony shortly
       as well.  He is a professor of political rhetoric, recently

15       retired, from UC Davis.

16        7.   On July 13, 2016, undersigned counsel spoke with Dr. Saul

17  Faerstein and informed him of his appointment to evaluate defendant

18  in this matter.  Dr. Faerstein stated that he would attempt to

19  evaluate defendant the week of July 18th and to prepare an expert

20  report the first week of August.

21        8.   On July 13, 2016, undersigned counsel telephoned counsel

22  for defendant to ascertain defendant's position on the present

23  motion.  Counsel for defendant stated that defendant objected to the

24  motion.  Counsel for defendant also stated that Mr. Masnick and

25  Professor Abbott would be preparing expert reports.

26        9.   On July 13, 2016, counsel for defendant e-mailed

27  undersigned counsel Mr. Masnick's and Professor Abbott's Circulum

28

1  Vites.   With respect to their testimony, counsel for defendant
2  stated:

> Mike Masnick is an editor and the CEO and founder of the
> blog Techdirt, a site that reports on technology news and
> tech-related issues. Since Techdirt's inception in 1997, it
> has been one of the most well-known and influential sources
> for commentary on the intersection of law, the internet,
> and culture. Masnick frequently writes about how modern
> Americans express themselves differently on the internet -
> particularly within various subcultures - and how this
> difference sometimes clashes with existing social norms and
> laws.   His CV is attached below.
>
> Professor Don Abbott is a professor of English Emeritus at
> the University of California, Davis.   His CV is attached.
> He was an Associate Professor at UCD in the Department of
> Rhetoric & Communication from 1988 to 1996, and continued
> to teach rhetoric in the English Department until 2015.
> The courses he has taught include Undergraduate: History of
> Rhetoric, Freedom of Expression, Literary Censorship,
> Renaissance Literature, Classical Rhetoric, Introduction to
> Principles of Criticism, Contemporary Theories of Rhetoric,
> Public Speaking, Group Discussion, Argumentation and
> Debate. Graduate: Contemporary Rhetorical Theory, Classical
> Rhetoric, Medieval and Renaissance Rhetoric, Early Modern
> Rhetorical Theory, Seminar in History of Rhetoric, Seminar
> in Kenneth Burke, Introduction to Graduate Studies.   He has
> published extensively on the subject of political rhetoric

    10.   At the time of motion, undersigned counsel has yet to
receive a summary of Mr. Masnick or Professor Abbott's testimony, the
basis for these conclusions, or the reports defendant has signaled
they will prepare.

    I declare under penalty of perjury that the foregoing is true
and correct to the best of my knowledge.

    Executed this 15 day of July 2016, in Los Angeles, California.


                                        ANNAMARTINE SALICK

                              3