MARRI DERBY (107209)
marri@marriderbylaw.com
23 Corporate Plaza Dr., Ste. 150
Newport Beach, CA 92660
Telephone: (949) 478-5084
Fax: (949) 608-7034

*Attorney for Defendant PETER WEXLER*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>PETER WEXLER<br><br>*Defendant.* | Case No.: 8:15-CR-00122-JLS<br><br>**MOTION FOR SANCTIONS INCLUDING RECUSAL OF THE U.S. ATTORNEY'S OFFICE FOR THE GOVERNMENT'S VIOLATION OF FEDERAL LAW, RULES OF PROFESSIONAL CONDUCT, THIS COURT'S ORDER, AND DUE PROCESS; DECLARATION OF MARRI DERBY; EXHIBITS**<br>Hearing Date:  August 23, 2016 |

Defendant PETER WEXLER, through counsel, Marri Derby, requests these sanctions for the government's violation of Mr. Wexler's privacy and due process rights under HIPAA, Federal Law, Rules of Professional Conduct, and this Court's Order Denying the Government's Demand for Production:

(1) Recusal of the U.S. Attorney's Office from the prosecution of Mr. Wexler;

(2) This Court refer the matter for possible civil/criminal prosecution for violation of HIPAA; and,

(3) The government's expert witness be precluded from testifying at trial and his report excluded from evidence.

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

This motion is based on the attached memorandum of points and authorities, all files and records in this case, and such additional evidence and argument as presented regarding this application.

Dated: August 14, 2016                              Respectfully Submitted,


                                                    /s/ Marri Derby
                                                    Marri Derby
                                                    Counsel for Peter Wexler

MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER

2

# Table of Contents

1. INTRODUCTION .................................................................................................. 4

2. HIPAA APPLIES TO MR. WEXLER'S MEDICAL RECORDS AT MDC ..... 5

3. THE GOVERNMENT'S CONDUCT VIOLATED FEDERAL LAW; RULES OF PROFESSIONAL CONDUCT; UNITED STATES ATTORNEY CODE OF CONDUCT; THIS COURT'S ORDER; AND DUE PROCESS .............................. 5

   3.1 Federal Statute – 42 U.S.C. Section 1320d-6 ............................................ 5

   3.2 Rules of Professional Conduct Violation--Applies to Inadvertent Disclosure of Protected Information ............................................................ 7

   3.3 *State Fund/Rico* Applies to Intentionally Sent Documents ................... 9

   3.4 The AUSA's Actions Violate The United States Attorney Code of Conduct ...................................................................................................... 11

   3.5 Violation of 45 CFR 164.512 ....................................................... 12

   3.6 Violation of This Court's Order .............................................................. 13

   3.7 Violation of Due Process and 4th Amendment ...................................... 15

4. SANCTIONS ....................................................................................................... 15

5. CONCLUSION ................................................................................................... 16

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

3

# MEMORANDUM OF POINTS AND AUTHORITES

## 1. INTRODUCTION

The government sought disclosure of Mr. Wexler's private medical and mental health records. The defense opposed the government's motion. This Court denied the government's motion. The government subsequently moved for reconsideration. That motion was set to be heard on August 12th. Before the hearing on August 12th, in contravention of this Court's Order, Federal Law, Canons of Professional Conduct, and Due Process, the government obtained the records from MDC and provided them to their expert for review. The government never informed the defense they somehow obtained these records. The defense learned of this violation when the government produced their expert's report referencing Mr. Wexler's private medical records.

Importantly, at the August 12th hearing the government failed to inform the defense and this Court when they received Mr. Wexler's privileged records. As late as July 29, 2016, the government was filing further authority to support their motion for reconsideration. A mere five days later on August 4, 2016, their expert issued his report referencing Mr. Wexler's protected medical records. The government should provide the defense and this Court with a declaration regarding the facts and circumstances on how and when they obtained the privileged records. The government played the defense and this Court and strong sanctions are warranted.

Rule 12.2(b) notice, does not allow the government carte blanche access to all aspects of Mr. Wexler's mental and physical health. Mr. Wexler's notice apprised the government of the intention to introduce evidence of a mental condition that explains or aids in understanding his actions which resulted in the charged offenses. He did not notice insanity defense, nor diminished capacity.

The jail records present a particular problem because they were compelled and were for a different purpose (therefore 5th Amendment issues arise). The Court was

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

4

never allowed to consider the relevance of the reports and 5th Amendment issues before the government took the matter into their own hands.

## 2. HIPAA APPLIES TO MR. WEXLER'S MEDICAL RECORDS AT MDC

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") establishes national standards to protect individuals' medical records and other personal health information and applies to health plans, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically. HIPAA requires safeguards to protect the privacy of personal health information, and sets limits and conditions on the uses and disclosures that may be made of such information without patient authorization. HIPAA applies to any entity that performs certain covered functions (the performance of which would by definition make the entity a health plan, health care provider, or health information clearinghouse).

Like any other organization, jails and prisons (including MDC) are subject to the HIPAA Privacy rule when they perform certain functions related to the delivery of healthcare, including providing and paying for health services and receiving and transmitting protected health information. It applies to correctional "health providers" that deliver services to patients in correctional facilities, but also often applies directly to employees of a department of corrections. Under the HIPAA Privacy rule, identifiable health information pertaining to "inmates" has been deemed "protected health information," called "PHI".

## 3. THE GOVERNMENT'S CONDUCT VIOLATED FEDERAL LAW; RULES OF PROFESSIONAL CONDUCT; UNITED STATES ATTORNEY CODE OF CONDUCT; THIS COURT'S ORDER; AND DUE PROCESS

### 3.1 Federal Statute – 42 U.S.C. Section 1320d-6

The Government's and MDC's conduct violated Federal law. 42 U.S.C.

MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER

5

§1320d-6 provides:

> Wrongful disclosure of individually identifiable health information
> (a) Offense
> A person who knowingly and in violation of this part-
> (1) uses or causes to be used a unique health identifier;
> (2) obtains individually identifiable health information relating to an individual; or
> (3) discloses individually identifiable health information to another person,
> shall be punished as provided in subsection (b).
> (b) Penalties
> A person described in subsection (a) shall-
> (1) be fined not more than $50,000, imprisoned not more than 1 year, or both;
> (2) if the offense is committed under false pretenses, be fined not more than $100,000, imprisoned not more than 5 years, or both; and
> (3) if the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm, be fined not more than $250,000, imprisoned not more than 10 years, or both.

The government violated the law as delineated by 42 U.S.C. §1320d-6. At the Status Conference on August 12th, AUSA Salnick stated something to the effect that "they have an agreement with MDC" and intimated this is standard operating procedure. 42 U.S.C. §1320d-6 does not require a culpable state of mind. The United States Attorney General stated in its "Memorandum Opinion for the General Counsel Department of Health and Human Services and The Senior Counsel to the Deputy Attorney General" regarding the Scope of Criminal Enforcement Under 42 U.S.C. §1320d-6, citing *Bryan v. United States,* 524 U.S. 184, at 193 (1998) "The term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law." The AG Opinion further cites *Staples v. United States*, 511 U.S. 600, 622 n. 3 (1994), "The *mens rea* presumption requires knowledge only

MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER

6

of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption, deeply rooted in the American legal system, that, ordinarily, ignorance of the law or a mistake of law is no defense to criminal prosecution." The AG Opinion is attached as Exhibit 1.

### 3.2 Rules of Professional Conduct Violation--Applies to Inadvertent Disclosure of Protected Information

In *Rico v. Mitsubishi Motors Corp*. (2007) 42 Cal.4th 807, the California Supreme Court considered what actions are ethically required of a lawyer who inadvertently receives privileged documents. The court concluded that according to the authority of *State Compensation Insurance Fund v. WPS Inc*. ((1999) 70 Cal.App.4th 644 (*State Fund*)), the attorney may only read as much as is necessary in order to determine the documents are privileged. Once that is determined, the attorney must notify opposing counsel immediately and try to resolve the situation.

In *Rico*, lawyers for Mitsubishi held a litigation strategy session at which one of the participants took notes about what was discussed at the meeting. *Id.* at 1. One of Mitsubishi's lawyers, Yukevich, printed out only one copy of the notes, which he kept to himself in order to help him defend the case. The notes were not labeled as either "work product" or "confidential." *Id.* at 1. Nonetheless, his opponent came into possession of the notes from the strategy session, and the court ultimately held his acquisition to be inadvertent. *Id.* at 1.

After Mitsubishi's opposing counsel made use of the document — which he knew Yukevich had not intended to produce, shared it with his experts and co-counsel, and used it in the deposition of a defense expert, defendants moved to disqualify plaintiffs' lawyers on grounds they unethically utilized Yukevich's work product resulting in irreversible prejudice to the defendants. *Id.* The trial court held the notes were privileged work product and that Yukevich's opposing counsel had acted unethically in his use of the notes. *Id.* at 3. Consequently, the court disqualified plaintiffs' attorneys and experts. *Id.* at 3.

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

| | |
|---|---|
| 1 | The *Rico* court adopted the *State Fund* standard, which was applied |
| 2 | prospectively: "When a lawyer who receives materials that obviously appear to be |
| 3 | subject to an attorney-client privilege or otherwise clearly appear to be confidential |
| 4 | and privileged and where it is reasonably apparent that the materials were provided |
| 5 | or made available through inadvertence, the lawyer receiving such materials should |
| 6 | refrain from examining the materials any more than is essential to ascertain if the |
| 7 | materials are privileged, and shall immediately notify the sender that he or she |
| 8 | possesses material that appears to be privileged. The parties may then proceed to |
| 9 | resolve the situation by agreement or may resort to the court for guidance with the |
| 10 | benefit of protective orders and other judicial intervention as may be justified." *Id.* at |
| 11 | 6 (citing *State Fund, supra*, 70 Cal.App.4th at 656-657). |
| 12 | The court further held disqualification of plaintiffs' legal team to be proper |
| 13 | due to the irreversible prejudice caused by opposing counsel's unethical use of the |
| 14 | notes. Id. at 7. |
| 15 | Attorneys received more guidance in the area of inadvertent disclosure of |
| 16 | privileged material in *Clark v. Superior Court* (2011) 196 Cal.App.4th37; 125 |
| 17 | Cal.Rptr.3d 361. Petitioner Clark sued his former employer VeriSign, after his |
| 18 | position as VeriSign's chief administrative officer was eliminated (*Id.* at 365). In |
| 19 | connection with the litigation, Clark gave his attorneys numerous documents that |
| 20 | VeriSign alleged were protected by the attorney-client privilege (*Id.* at 364- |
| 21 | 65). VeriSign demanded the documents be returned, citing both *Rico v. Mitsubishi* |
| 22 | *Motors Corp*. (2007) 42 Cal.4th 807 and *State Comp. Ins. Fund v. WPS Inc*. (1999) |
| 23 | 70 Cal.App.4th 644 (*Id.* at 365). The trial court granted VeriSign's motion to |
| 24 | disqualify Clark's lawyers and a motion for other ancillary relief on the basis of its |
| 25 | finding that Clark's lawyers received documents that contained obvious indicia of |
| 26 | privilege and that they had a duty not to review them any more than was reasonably |
| 27 | necessary to determine their privileged nature, and then to notify VeriSign (*Id.,* at |
| 28 | 367). |

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

1 | The court further found the actions of Clark's attorneys upon receiving the
2 | privileged documents to be in violation of *Rico* and *State Fund* because their review
3 | of the documents exceeded the amount of review that should have been necessary to
4 | determine that the documents were privileged, and in addition, there was also some
5 | evidence that Clark's attorneys affirmatively used some of the information to
6 | advance Clark's case. (*Id.* at 373-74) Under the circumstances, the court found that
7 | the remedy of disqualification was appropriate. (*Id.* at 374-75)

### 3.3 *State Fund/Rico* Applies to Intentionally Sent Documents

The question, however, here is whether the *State Fund/Rico* rule applies when a document is intentionally sent from a source other than the privilege owner/counsel, without the owner's consent.

In 2013, the California State Bar, in Formal Opinion 2013-188, answered the question with a resounding *YES.* A lawyer recipient of an attorney-client privileged document sent without consent of its owner has the same obligations triggered by *State Fund/Rico*, regardless of whether the source of the privileged documents was the owner itself, owner's counsel, or a third party.

Formal Opinion 2013-188 (Attached as Exhibit 2) analyzed the hypothetical wherein a defense attorney receives an unsolicited email from an anonymous ex-employee sender, claiming to attach a confidential communication between attorney's opposing counsel and opposing counsel's client, employer, purporting to establish that employer was committing a fraud, assisted by opposing counsel. Formal Opinion 2013-188 concluded that this factual scenario, the intentional transmission of a privileged document without the privilege owner's consent, does not change application of the *State Farm/Rico* rule. Noting the core value nature of the attorney-client privilege in the American justice system, Formal Opinion 2013-188 analyzed the two prongs of the *State Fund/Rico* rule trigger: whether a document 1) "obviously appears" or "otherwise clearly appears" to be confidential

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

and privileged; and 2) whether it is "reasonably apparent that the materials were inadvertently disseminated."

On the first prong, Formal Opinion 2013-188 reviewed *Clark v. Superior Court* (2011) 196 Cal. App. 4th 37, 49, which held that the transmission of information between attorney and client is presumptively privileged, regardless of its content. In the Opinion's hypothetical, the document is identified as communication between employer and opposing counsel. Thus, it "obviously appears" or "otherwise clearly appears" to be privileged under *Clark*.

On the second prong, Formal Opinion 2013-188 acknowledged that the document was not received from opposing counsel through inadvertence, but was intentionally transmitted by an anonymous third party. Nevertheless, given the strong public policies underlying the *State Farm/Rico* rule to protect the core values of the attorney-client privilege, the Opinion concluded that the *State Fund/Rico* rule applies both when it is "reasonably apparent that the materials were provided or made available through inadvertence" by the privilege holder's counsel himself (the original rule), *and* when a third party intentionally sends privileged materials to another attorney, and it is reasonably apparent that those materials were sent without their owner's authorization.

In light of the strong policies under California law, Formal Opinion 2013-188 rejected the argument that the *method* of transmission of a privileged document without consent of its owner should be a distinguishing factor in the applicability of a receiving attorney's ethical obligations upon receipt of that privileged material. Irrespective of the circumstances under which the attorney receives the document, if it is reasonably apparent that the materials were sent without their owner's authorization, receiving attorney's ethical obligations under *State Fund/Rico* are triggered and counsel must stop reading, and notify the opposing counsel immediately. The government clearly failed to do so in this instance. Even worse,

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

they sent these records to their expert, and the expert relied upon them in forming his opinion.

### 3.4 The AUSA's Actions Violate the United States Attorney Code of Conduct

The United States Attorney Code of Conduct 1-4.100 - Allegations of Misconduct by Department of Justice Employees— Reporting Misconduct Allegations provides:

> Department employees shall report to their United States Attorney or Assistant Attorney General, or other appropriate supervisor, any evidence or non-frivolous allegation of misconduct that may be in violation of any law, rule, regulation, order, or applicable professional standard. (With respect to reporting allegations of misconduct by non-DOJ attorneys or judges, see USAM 1-4.150.) The supervisor shall evaluate whether the misconduct at issue is serious, and if so shall report the evidence or non-frivolous allegation to the Office of the Inspector General (OIG) or to the Office of Professional Responsibility (OPR), and to EOUSA, as set forth below.
>
> If the supervisor was involved in the alleged violation, the supervisor must bring the evidence or allegation to the attention of a higher-ranking official. An employee who wishes to report directly to OPR or OIG may do so.
>
> When an employee or a supervisor is uncertain as to whether a certain allegation should be referred, the supervisor may telephone OPR or OIG to determine what action to take.

A prosecutorial office is obligated not only to prosecute with vigor, but it is also supposed to seek justice. "[The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to

MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER

11

govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, (1935) 295 U.S. 78, 88. "Thus a prosecutor's duty of neutrality is born of two fundamental aspects of his employment. First, he is a representative of the sovereign; he must act with the impartiality of those who govern. Second, he has the vast power of the government available to him; he must refrain from abusing that power by failing to act evenhandedly." *People ex. Rel. Clancy v. Superior Court,* (1985) 39 Cal.3d 740.

In its quest for a conviction, the government secretly snooped through Mr. Wexler's medical records, then provided them to their expert in violation of the Constitution, criminal law, rules of professional conduct and this Court's Order.

### 3.5 Violation of 45 CFR 164.512

The government may attempt to argue that its cozy relationship with MDC is warranted under 45 CFR 164.512, specifically section (f)(1)(ii)(C). This section allows for disclosure under an "investigative demand" made by law enforcement. When law enforcement makes a request it must include a written statement that the information is relevant and material to a legitimate law enforcement inquiry, that it is specific and limited in scope, and that information is stripped of personal identifiers.

This requires (1) a statement by investigator that (a) the material is relevant and for a legitimate law enforcement inquiry (b) specific and limited in scope; (c) information stripped of personal identifiers.

Here, even if there was a formal written request (none has been produced) there is no legitimate law enforcement inquiry since the issue was before the Court. The government's actions were nothing more than an illegitimate attempt to do an end run around the Court. In *U.S. v. Zamora*

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

1  408 F. Supp. 2d 295, 298 (Dist. Court, SD Texas 2006), the court noted,
2  "As an initial matter, pursuant to § 164.512(f)(1)(ii)(C), information sought
3  must be relevant and material to the law enforcement inquiry, the request
4  must be specific and limited in light of the information sought, and
5  deidentified information could not be reasonably used.
6      It is interesting to note that Santa Ana Jail refused to comply with the
7  government's demand for Mr. Wexler's private medical and mental health
8  records. They were presumably following correct legal advice that it would
9  violate HIPAA.
10     If the government subpoenaed the documents from MDC, this does
11 not absolve them from discipline either. Abuse of the subpoena process is
12 grounds for discipline by the California State Bar. In the case of *People v.*
13 *Orenthal James Simpson* (Los Angeles County Superior Court Case
14 Number BA097211), the State Bar Court issued a formal public reproval of
15 one of the defendant's lawyers, Carl E. Douglas, for misusing the subpoena
16 powers of the court. In the case of Mr. Douglas, it was a witness, not
17 records, that were directed to the attorney's office. The conduct of the
18 government in this case constitutes a more offensive abuse of the court's
19 subpoena process, since it directed the production of Constitutionally
20 protected mental health records to its office, where they were examined and
21 disseminated absent any court intervention.
22     **3.6 Violation of This Court's Order**
23     On June 23rd, the government filed an Ex Parte Application for
24 disclosure of Mr. Wexler's mental health records (Doc 118). Specifically, at
25 page 6, the government stated, "the government moves the Court to order
26 the Santa Ana Jail and the Metropolitan Detention Center to disclose to the
27 government any and all materials relevant to defendant's mental health,
28 including, but not limited to any of defendant's mental health evaluations

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

13

conducted at the detention facilities." This Court *denied* the government's request. On July 8th, this Court on page 3, held the government had not cited authority for its request, "Accordingly, the Court denies this request." This Court then directed the parties to confer regarding this issue (Page 3 of the Order).

The parties conferred on July 14th. The defense offered to obtain and review the items, and then possibly reveal the records to the government, stating "It is not possible to determine without seeing them first (and discussing these private records and their release with Mr. Wexler)." See email from attorney Marri Derby to AUSA's Annamartine Salick and Celeste Corlette, attached as Exhibit 3.

The government refused to agree to this proposal. Instead, the following day, the government moved for Reconsideration of this Court's Order (Doc 123). The defense filed an Opposition to this motion on July 23rd (Doc 131). On July 29th, the government filed a Reply in Support of their motion (Doc 136). The matter was scheduled to be heard by this Court on August 12th.

On August 5th, the government disclosed to the defense the MDC records they illegally obtained and a report from Dr. Faerstein, the government's chosen psychiatrist. Dr. Faerstein's report is dated August 4th, and on page 2 of his report, he lists the items reviewed, including at number 8: "MDC-LA medical records from the BOP." (See Declaration of Marri Derby). The MDC records were attached to his report. Defense counsel was never notified that the government obtained the reports, nor did the government ever request permission to review the reports. The government did not disclose that they previously obtained the reports to the defense. The defense's first notice was upon reviewing Dr. Faerstein's report. Instead, they gave them to their expert, Dr. Faerstein.

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

14

Dr. Faerstein's opinion is based on these illegally obtained MDC records. He cites portions of the records in his report. (See Declaration of Marri Derby.) He uses these records and ultimately opines that Dr. Saint Martin is incorrect in his diagnosis. Because of this egregious violation by the government, Dr. Faerstein and his opinions contained in his report should be excluded at trial in this matter.

"All federal courts are vested with inherent powers enabling them to… ensure obedience to their orders." *US v. Grace*, 526 F. 3d 499, 509 (9th Cir. 2008). The government's conduct contravened this Court's Order. At the hearing on the 12th, this Court noted that it was still not inclined to order disclosure and was not persuaded by the government's motion for reconsideration. Apparently the government deduced its motion for reconsideration was not viable and consequently took matters into its own hands.

### 3.7 Violation of Due Process and 4th Amendment

The Fourth Amendment of the US Constitution protects citizens from unreasonable searches and seizures. Although the word "privacy" does not appear in the text, the Fourth Amendment is often viewed as protecting an individual's "expectation of privacy" from government intrusion, including intrusion by law enforcement officials. Medical records contain some of the most sensitive information that can be searched for any person.

The government obtained Mr. Wexler's private medical and mental health records without following the processes laid out by law and in violation of this Court's Order.

### 4. SANCTIONS

The following sanctions are warranted: (1) Recusal of the U.S. Attorney's Office from the prosecution of Mr. Wexler; (2) This Court refers the matter for possible civil/criminal prosecution for violation of HIPAA; and, (3) The

**MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER**

15

government's expert witness be precluded from testifying at trial and his report excluded from evidence.

## 5. CONCLUSION

The government has brazenly thumbed its nose at Mr. Wexler's privacy rights, and undermined the integrity of the Court process. The defense respectfully requests this Court impose the above sanctions.

Respectfully submitted,

Dated: August 14, 2016          /s/    Marri Derby
                                Marri Derby
                                Attorney for Peter Wexler

MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER

16

# DECLARATION OF MARRI DERBY

1.) I am an attorney licensed to practice law in the U.S. Federal Court, Central District of California. I am appointed counsel for Defendant Peter Wexler under the Criminal Justice Act.

2.) On July 14th, 2016 I sent the email attached as Exhibit 3 to AUSA's Annamartine Salnick and Celeste Corlette.

3.) I obtained via email on August 5th, from AUSA Annamartine Salnick, discovery USA002222-USA002388 which contained Dr. Faerstein's report and the MDC mental and medical health records for Peter Wexler. Dr. Faerstein's report is dated August 4, 2016.

4.) I was not notified about the government obtaining these records prior to receiving them on the 5th of August.

5.) Never was I asked by the government if I would give them permission to review the MDC records it had surreptitiously obtained.

6.) I have reviewed Dr. Faerstein's report and his report indicates that he reviewed Mr. Wexler's private MDC records and his report references the MDC records.

I declare the above to be true under penalty of perjury in Newport Beach, California.

Dated: August 14, 2016            Respectfully submitted,

                                              /s/Marri Derby
                                              Marri Derby

MOTION FOR SANCTIONS INCLUDING RECUSAL FOR GOVERNMENT'S VIOLATION OF HIPAA; FEDERAL LAW; ETHICAL VIOLATIONS; AND COURT ORDER

17