EILEEN M. DECKER
United States Attorney
PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division
ANNAMARTINE SALICK (Cal. Bar No. 309254)
MELISSA MILLS (Cal. Bar No. 248529)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3424/2451
    Facsimile: (213) 894-7631
    E-mail:   Annamartine.Salick@usdoj.gov
              Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 15-122-JLS |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S RESPONSE TO DEFENDANT'S RULE 29 MOTION</u> |
| v. | Trial Date:   August 23, 2016 |
| PETER RONALD WEXLER, | Hearing Date: August 30, 2016 at 8:00 a.m. |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and undersigned counsel, hereby files its response to defendant's motion for judgement of acquittal pursuant to Rule 29(A) of the Federal Rules of Criminal Procedure.

///

///

This response rests upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 30, 2016                    Respectfully submitted,

                                        EILEEN M. DECKER
                                      United States Attorney

                                      PATRICIA A. DONAHUE
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                       /s/
                                      ANNAMARTINE SALICK
                                      MELISSA MILLS
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On August 27, 2016, defendant Peter Ronal Wexler ("defendant") filed a motion for judgement of acquittal pursuant to Rule 29(A) of the Federal Rules of Criminal Procedure.  CR 184.  Defendant raised three arguments: (1) as to all counts, the government has failed to provide sufficient evidence to sustain a conviction; (2) with respect to Counts Four, Six, and Ten, the government has failed to present admissible evidence that defendant's Google+ account "traveled in interstate commerce"; and (3) with respect to Counts One and Eleven, the government has failed to prove sufficient evidence that a threat was made to a natural person.  While defendant's second argument is presently pending before the Court, the government nonetheless opposes the argument, addresses it here, and reserves the opportunity to further brief the issue at a later date.  The government submits that the government has adduced sufficient evidence to allow a reasonable jury to find that defendant transmitted threatening communications in interstate commerce, in violation of 18 U.S.C. § 875(c), and threatened a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B), and that defendant's threats were directed at a natural persons, specifically the Federal Bureau of Investigation ("FBI") Special Agents ("SA") who attempted to interview him on September 7, 2015.

**II.  ARGUMENT**

    **A.  THE GOVERNMENT INTRODUCED EVIDENCE SUFFICIENT TO SUSTAIN A CONVICTION ON ALL COUNTS**

Defendant argues, without authority or any specificity, that "the evidence is insufficient to sustain a conviction" as to all

counts. CR 184 at 6. Defendant's argument is without merit and the government submits that a reasonable jury to find that defendant transmitted threatening communications in interstate commerce, in violation of 18 U.S.C. § 875(c), and threatened a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B),

In ruling on a motion for judgment of acquittal, the court must review the evidence "in the light most favorable to the government to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Freter, 31 F.3d 783, 785 (9th Cir. 1994) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also United States v. Iriarte- Ortega, 113 F.3d 1022, 1024 n.2 (9th Cir. 1997); United States v. Bancalari, 110 F.3d 1425, 1428 (9th Cir. 1997). In resolving a motion for a judgment of acquittal, the court must consider all of the evidence presented at trial. United States v. Lopez, 625 F.2d 889, 897 (9th Cir. 1980).  The court "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." United States v. Ramos, 558 F.2d 545, 546 (9th Cir. 1977); accord United States v. Dreitzler, 577 F.2d 539, 545 (9th Cir. 1979). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Lewis, 787 F.2d 1318, 1323, modified on other grounds, 798 F.2d 1250 (9th Cir. 1986).

With respect to 18 U.S.C. § 875(c), the government must prove four elements. The government offered the following evidence regarding element one of 18 U.S.C. § 875(c), that defendant knowingly

transmitted a communication on an Internet blog post containing a threat to physically harm or murder FBI SAs or Assistant Director in Charge ("ADIC") David Bowdich:

- Stipulation of the Parties:
    - From its inception through September 25, 2015, defendant Peter Ronald Wexler maintained and operated a blog on the Internet at www.wexblog.prwexler.com, and all posting made on that blog were made by defendant.
    - From its inception through September 25, 2015, defendant Peter Ronald Wexler maintained and operated the Google+ account, "PRWEXLER2," and Google E-Mail ("Gmail") Account, PRWEXLER2@gmail.com, and all postings made on the Google+ account, and all e-mails sent from PRWEXLER2@gmail.com were made by defendant. Testimony of FBI SA Nicholas Vicencia that he viewed 20 charged threats on www.wexblog.prwexler.com and prwexler2's Goolge+ account.
- GoDaddy.com, Inc. subscriber records that show defendant was the subscriber of the Wexblog.
- Google, Inc., subscriber records that show defendant was the subscriber of the Goolge+ account, prwexler2.
- Testimony of FBI SA Nicholas Vicencia that he reviewed the ten charged posts on the Wexblog and defendant's Google+ account.
- Testimony of FBI SA Vicenica that images defendant imported into his blog posts were found on the Internet and altered by the defendant in order to make defendant's posts.

- Testimony of FBI SA Vicencia that defendant selected videos and images propagated by the foreign terrorist organization, the Islamic State of the Iraq and the Levant ("ISIL"), also known as "ISIS."
- Testimony of FBI SA Luis Altamirano that he reviewed the defendant's September 8, 2015 post after SA Altamirano attempted to interview the defendant and perceived the post as a direct threat of violence against him and his partner.

The government offered the following evidence regarding element two of 18 U.S.C. § 875(c), that a reasonable person hearing or reading the communications in its full context would interpret the communications as a threat to physically harm or murder FBI SAs or ADIC Bowdich:

- Testimony of Orange County District Attorney's Office Investigator Brian Sheldon, that he considered defendant's July and August online communications to be concerning and issued an officer safety bulletin or "BOLO" to warn other law enforcement personnel of defendant.
- Testimony of FBI SA Altamirano that he attempted to interview defendant regarding his concerning online communications on September 7, 2015, identified himself as an FBI SA, and stated that he was there to speak with defendant about his concerning online posts and defendant declined to be interviewed.
- Testimony of FBI SA Altamirano that he reviewed the defendant's September 8, 2015 post, after SA Altamirano attempted to interview defendant and perceived the message as a direct threat of violence against him and his partner.

- Testimony of Mr. Bowdich that he reviewed defendant's September 8, 2015 post and considered it to be a direct threat against the FBI SAs who attempted to interview defendant.
- Testimony of Mr. Bowdich that he reviewed the defendant's threats, as contained in Exhibit 15-23, and viewed them as a direct threat against him and his family.

The government offered the following evidence regarding element three of 18 U.S.C. § 875(c), that defendant intended that the communications be understood as a threats to physical harm or murder FBI Special Agents or ADIC Bowdich:

- Testimony of FBI SA Vicenica that defendant conducted Internet searches to determine the location of the FBI's headquarters in Los Angeles.
- Testimony of FBI SA Vicenica that defendant speculated as to where Mr. Bowdich and his family lived in his online posts.
- Testimony of FBI SA Ashely Mericle that Schrade knife referenced in defendant's online threats was found at 2760 West Lincoln Ave, Space 9, Anaheim, CA 92801 ("defendant's residence) during execution of federal search warrant.
- Testimony of FBI SA Altamirano that on September 7, 2015, he identified himself as an FBI SA to the defendant, advised defendant he was there to speak with him about his concerning online communications, and defendant declined to speak with him.
- Testimony of Mr. Bowdich that an image of press conference defendant selected and modified to include an image of a gun superimposed on Mr. Bowdich's head was from a press

5

1 conference Mr. Bowdich gave during the FBI's investigation of
2 the 2013 Los Angeles International Airport shooting, in which
3 an individual targeted law enforcement officers and the FBI
4 investigating the shooting, initially, as an act of
5 terrorism.

6 The government offered the following evidence regarding element
7 four of 18 U.S.C. § 875(c), that the communications were transmitted
8 in interstate or foreign commerce:

- Subscriber records from Google, Inc., showing that the PRWEXLER2 account was accessed only from IP Address 172.90.55.58 from June 11, 2015 through September 16, 2016. (Exhibit 30).
- Subscriber records from Google, Inc., showing that defendant made posts from IP Address 172.90.55.58 on the following dates: September 9, 2015; September 11, 2016; September 16, 2015; and September 19, 2015. (Exhibit 24)
- Subscriber records from Time Warner Cable showing that IP Address 172.90.55.58 was subscribed to by "Peter Wexler" from June 4, 2015 through September 18, 2015, at the subscriber address of 2760 West Lincoln Ave, Space 9, Anaheim, CA 92801. (Exhibit 25)
- Subscriber records from GoDaddy.com, Inc., that defendant's blog was subscribed to by defendant at a California address.
- Testimony of FBI SA Mericle that defendant's residence did not appear to have been moved and defendant had no vehicle for transportation.
- Testimony of FBI SA Vicencia that FBI surveilled defendant's residence multiple times a day between September 7, 2015 and

6

1       defendant's arrest on September 25, 2015, and defendant's
2       residence was seen in the mobile home park in California on
3       those dates.
4    With respect to 18 U.S.C. § 115(a)(1)(B), the government must
5 prove five elements.  The government offered the following evidence
6 regarding element one of 18 U.S.C. § 115(a)(1)(B), that defendant
7 knowingly made a threat to physically harm or murder FBI SAs or ADIC
8 Bowdich:

- Stipulation of the Parties:
    - From its inception through September 25, 2015, defendant Peter Ronald Wexler maintained and operated a blog on the Internet at www.wexblog.prwexler.com, and all posting made on that blog were made by defendant.
    - From its inception through September 25, 2015, defendant Peter Ronald Wexler maintained and operated the Google+ account, "PRWEXLER2," and Google E-Mail ("Gmail") Account, PRWEXLER2@gmail.com, and all postings made on the Google+ account, and all e-mails sent from PRWEXLER2@gmail.com were made by defendant.  Testimony of FBI SA Nicholas Vicencia that he viewed 20 charged threats on www.wexblog.prwexler.com and prwexler2's Goolge+ account.
- GoDaddy.com, Inc. subscriber records that show defendant was the subscriber of the Wexblog.
- Google, Inc., subscriber records that show defendant was the subscriber of the Goolge+ account, prwexler2.

7

- Testimony of FBI SA Nicholas Vicencia that he reviewed the ten charged posts on the Wexblog and defendant's Google+ account.
- Testimony of FBI SA Vicenica that images defendant imported into his blog posts were found on the Internet and altered by the defendant in order to make defendant's posts.
- Testimony of FBI SA Vicencia that defendant selected videos and images propagated by the foreign terrorist organization, the Islamic State of the Iraq and the Levant ("ISIL"), also known as "ISIS."
- Testimony of FBI SA Luis Altamirano that he reviewed the defendant's September 8, 2015 post after SA Altamirano attempted to interview the defendant and perceived the post as a direct threat of violence against him and his partner.

The government offered the following evidence regarding element two of 18 U.S.C. § 115(a)(1)(B), the intended recipient of the threat was a federal law enforcement officer at the time the threat was made:

- Testimony of FBI SA Altamirano that he was employed by the FBI as a SA in 2015, was assigned to a terrorist threat squad from July to September 2015, and was a federal law enforcement officer authorized by the U.S. Government to engage in violations of federal law at the time.
- Testimony of FBI SA Altamirano that he viewed the threat posted on September 8, 2015, after SA Altamirano's attempted interview of defendant, as a direct threat of violence against him and his partner.

- Testimony of Mr. Bowdich that he was employed by the FBI September 2015, was the ADIC for the Los Angeles Field Office in September 2015, and was a federal law enforcement officer authorized by the U.S. Government to engage in violations of federal law at the time.
- Testimony of Mr. Bowdich that he viewed the threats defendant posted in Exhibits 15-23 as direct threats of violence against him and his family.

The government offered the following evidence regarding element three of 18 U.S.C. § 115(a)(1)(B), a reasonable person haring or reading the communication in its full context would interpret the communication as a threat to physically harm or murder FBI SAs or Mr. Bowdich:

- Testimony of Orange County District Attorney's Office Investigator Brian Sheldon, that he considered defendant's July and August online communications to be concerning and issued an officer safety bulletin or "BOLO" to warn other law enforcement personnel of defendant.
- Testimony of FBI SA Altamirano that he attempted to interview defendant regarding his concerning online communications on September 7, 2015, identified himself as an FBI SA, and stated that he was there to speak with defendant about his concerning online posts and defendant declined to be interviewed.
- Testimony of FBI SA Altamirano that he reviewed the defendant's September 8, 2015 post, after SA Altamirano attempted to interview defendant and perceived the message as a direct threat of violence against him and his partner.

9

- Testimony of Mr. Bowdich that he reviewed defendant's September 8, 2015 post and considered it to be a direct threat against the FBI SAs who attempted to interview defendant.
- Testimony of Mr. Bowdich that he reviewed the defendant's threats, as contained in Exhibit 15-23, and viewed them as a direct threat against him and his family.

The government offered the following evidence regarding element four of 18 U.S.C. § 115(a)(1)(B), defendant intended the communication be understood as a threat to physically harm or murder FBI SAs or Mr. Bowdich:

- Testimony of FBI SA Vicenica that defendant conducted Internet searches to determine the location of the FBI's headquarters in Los Angeles.
- Testimony of FBI SA Vicenica that defendant speculated as to where Mr. Bowdich and his family lived in his online posts.
- Testimony of FBI SA Ashely Mericle that Schrade knife referenced in defendant's online threats was found at 2760 West Lincoln Ave, Space 9, Anaheim, CA 92801 ("defendant's residence) during execution of federal search warrant.
- Testimony of FBI SA Altamirano that on September 7, 2015, he identified himself as an FBI SA to the defendant, advised defendant he was there to speak with him about his concerning online communications, and defendant declined to speak with him.
- Testimony of Mr. Bowdich that an image of press conference defendant selected and modified to include an image of a gun superimposed on Mr. Bowdich's head was from a press

10

1
2
3
4
5

conference Mr. Bowdich gave during the FBI's investigation of the 2013 Los Angeles International Airport shooting, in which an individual targeted law enforcement officers and the FBI investigating the shooting, initially, as an act of terrorism.

The government offered the following evidence regarding element five of 18 U.S.C. § 115(a)(1)(B), the threat was made with the intent to impede, intimidate, or interfere with the FBI SAs or ADIC Bowdich while they were engaged in the performance of their official duties:

- Testimony of FBI SA Altamirano that he conducted a threat assessment of defendant based on defendant's prior communications to a Judge in Texas, a Bureau of Prisons Facility in Leavenworth, and defendant's post on the Jacksonville Aviation Authority's public Facebook page.
- As part of this threat assessment, FBI SA Altamirano testified that he attempted to interview the defendant but that defendant declined to speak with him. FBI SA Altamirano further testified that in his attempt to speak with defendant, he advised defendant that he was with the FBI and wanted to discuss defendant's online communications.
- Testimony of FBI SA Vicencia that FBI conducted surveillance of defendant's residence multiple times a day until the search of defendant's residence on September 25, 2015.
- Testimony of FBI SA Vicencia that based on defendant's threatening communications, the FBI took special precautions in executing the search warrant of defendant's residence of September 25, 2015.

11

- Testimony of Mr. Bowdich that in response to defendant's threats, he and his family took safety precautions and that Mr. Bowdich asked to be notified immediately if defendant appeared to be heading towards Mr. Bowdich's residence.

The evidence outlined above, evaluated in the "light most favorable to the government" establishes that a reasonable jury could find defendant transmitted threatening communications in interstate commerce, in violation of 18 U.S.C. § 875(c), and threatened a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B).

### B. THE GOVERNMENT HAS ADDUCED SUFFICIENT EVIDENCE AT TRIAL THAT ALL THREATS WERE MADE TO NATURAL PERSONS

Defendant argues, erroneously, that with respect to Counts One and Eleven, the government has failed to establish that the threats were made to a natural person. CR 184 at 5. Defendant argues that because the post contained in Exhibit 14 was "directed 'To the FBI'" it does not refer or identify any specific individuals or natural persons. Id.

First, defendant is wrong on the facts. On September 8, 2015 defendant posted the following message to his Wexblog:

> IS IT MURDER TO KILL AN FBI PIG WHO KNOCKS ON YOUR DOOR WITHOUT A WARRANT? I think not. To the FBI: Don't bother me, again, unless you're looking for a Left-Handed Shave with my kitchen knife, a Schrade SCHF9, which can chop down a tree and perfectly slice a juicy red, vine-ripened tomato, in that order!

Exhibit 14.

The caption of this post, "AN FBI PIG WHO KNOCKS ON YOUR DOOR WITHOUT A WARRANT" is clearly directed at the FBI SAs who attempted to interview defendant on September 7, 2015. FBI SA Altamirano

12

testified that he understood this post to be a direct threat against him and his partner.  Mr. Bowdich also testified that he understood this threat to be a threat against the FBI SAs who attempted to interview defendant on September 7, 2015.  Defendant's attempt to isolate the single phrase "To the FBI" belies the evidence introduced in the government's case showing that defendant specifically intended to reference the two FBI SAs who attempted to interview him on September 7, 2015.

Second, defendant is wrong on the law.  Defendant erroneously relies on United States v. Havelock, 664 F.3d 1284 (9th Cir. 2012) (en banc) to argue that his post cannot violate 18 U.S.C. §§ 875(c) and 115(a)(1)(B) because, as he argues, his post was directed to an agency, the FBI, and not to a person.  This argument is rebutted by the post, which specifies "AN FBI PIG WHO KNOCKS ON YOUR DOOR" the day after two FBI agents had, in fact, knocked on defendant's door.  As defendant's post was directed at natural persons, specifically FBI agents, defendant's reliance on United States v. Havelock is misplaced.  See also United States v. Keyser, 704 F.3d 631, 636 (9th Cir. 2012) (threat addressed to "manager," without specifying the name of the manage, satisfies requirement that threat be addressed to a natural person).

In Havelock, the defendant was charged with six counts of mailing threatening communications, in violation of 18 U.S.C. § 876(c), which prohibits the mailing of a communication to any other person that contains a threat to kidnap any person or any threat to injure the person of the addressee or of another.  In Havelock, the defendant addressed and mailed envelopes containing what he called a "media packet" to media outlets and two websites.  Id. at 1287.  The

13

Ninth Circuit held that section 875(c) requires that that the communication be addressed to a natural person, and the Court explained:

> We hold that in order to determine whom a threatening communication is "addressed to," a court may consult the directions on the outside of the envelope or the packaging, the salutation line, if any, and the contents of the communication. Here, as charged in the indictment, [defendant]'s mailings were all addressed to newspapers and websites. The Manifesto, the only writing that the government alleges contained threats, has no salutation line. Even looking to the contents of the Manifesto, it indicates nothing at all about the identity of any individual "person" to whom the communication supposedly was addressed. A few of Havelock's statements appeared to be addressed to whoever happened to read them: e.g., "I will slay your children." It is impossible to determine (and is highly unlikely) that Havelock, in the quoted phrase, was addressing any particular person whose children he was going to slay. On this record, we conclude that a reasonable jury could not have found that Havelock's writings were addressed to a natural person, as § 876(c) requires.

Id. at 1296.

By contrast, in this case, a reasonable jury could find that, as charged in Counts One and Eleven of the indictment, the context of defendant's post was directed to natural persons, specifically the FBI SAs who attempted to interview him on September 7, 2015. In addition, nothing in the language of the statutes or the Court's holding in Havelock requires that that the threats be made to a named person; the requirement is only that the threat be to a natural person. The government has adduced sufficient evidence at trial that would allow a reasonable jury to find that all of defendant's posts, including the one made on September 8, 2015 were directed at natural persons.

## III. CONCLUSION

For the foregoing reasons, defendant's motion for judgment of acquittal pursuant to rule 29(A) of the Federal Rules of Criminal Procedure should be denied.

Dated: August 30, 2016          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, Criminal Division


   /s/
ANNAMARTINE SALICK
MELISSA MILLS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA